All rise. The Eleanor Laws Appellate's Court. 50 visions now in session. The Honorable Justice Mary Ann Rickler is beside me. Please be seated. Madam Clerk, would you call the first case? 122-1855. People first. Mary Boss. Thank you. Counsel, just a couple preliminary matters. First of all, please keep your voices up. You all know this. This microphone records, we hope, but it doesn't amplify. So keep your voices up. There are people in the back row. Second, there will be 20 minutes aside with five minutes for the appellate for rebuttal. You don't need to reserve that. You will be given that. With that, whenever you're ready, the appellant may begin. Thank you, Your Honor. May it please the Court, my name is Kieran Weiberg. I'm with the Office of the State Appellate Defender, and I'm here today representing Randy Boss. Allow me to apologize just briefly for my appearance. I had a medical procedure that took a little longer to heal than I expected. We've seen worse. I'm sure you have. I'm sure. All right. So, may it please the Court. Counsel? Your Honor, my intention today is to begin by discussing the second issue raised in the briefs regarding the Rule 431B violation. Okay. And then, as time permits, we will address the Second Amendment issue raised. I am, of course, prepared to answer questions on whatever topic Your Honors would wish. With regards to the Rule 431B issue, the procedure followed by the Circuit Court in this case was varied to a certain extent. The judge questioned the veneer members in Groups 4, 3, 2, occasionally individually. However, there was one respect in which that questioning was quite… Was that by agreement of the parties, how the judge did it? There was no mention in the record specifically about the exact procedure. Nobody objected to this, right? Oh, no. Nobody objected to it, no.  However, there was one respect in which the judge's question was quite consistent, which is, in every instance except for one involving a veneer member who never sat on the jury, when discussing the third Rule 431B principle, the judge asked jurors if they understood and accepted that Mr. Voss was not required to present any testimony and not any evidence. This is notable in part because just shortly before this, in giving his opening remarks to the veneer, the judge had specifically delineated several different kinds of evidence, noted there's testimony, there's physical evidence, etc. So the jury had already been alerted to the fact that, as of course we all know, while all testimony is evidence, not all evidence is testimony. We have documentary evidence, scientific, physical, you name it. So certainly just on its face, this is clearly significantly different from what Rule 431B requires. Rule 431B requires that the jury be admonished that the defendant is not required to present any evidence at all. Now the State argued in their brief that this should still be found sufficient under Rule 431B, and in particular they referred to cases where, for example, the circuit court simply informed the jury or asked the jury to affirm that they understood that the defendant was not required to prove their innocence. Now leaving aside any question as to whether those cases were or were not correct. The juror is saying more. He told the entire veneer basically the defendant didn't have to do anything. He could just sit back and see if the State proves its case. Doesn't that sort of necessarily inform these separate things that he talked to the jurors about in smaller groups? Oh, pardon me. Yes, Your Honor. The court did make mention of that at various times. However, significantly and importantly, he did not make mention of that during the Rule 431B questioning, which is what is really at issue here because, of course, Rule 431B doesn't just require that these principles get mentioned to the jury. It requires a specific question-and-answer process in which the jurors have an opportunity to affirm that they understand and accept these principles. And that is what did not happen here. Now, you're not suggesting it's structural error. You acknowledge that even if we agree with you, you would have to show us that the evidence is falsely balanced. Yes, correct. We pursued a first-problem claim error argument in this case. So, as I said, the State relied on these cases where simply the statement that the defendant was not required to prove his innocence as part of the 431B questioning was found sufficient. I assume that I don't think either side cited a case similar, identical to this, where the court focused solely on testimony rather than on evidence. That's correct. I have not found a case that I would say is directly analogous to this one in that way. Okay. However, the cases that the State cites are distinguishable in an important way because those cases involve an admittedly vague but broad statement. The statement that the defendant is not required to prove his innocence, do you understand, and et cetera. Presumably, if the defendant is not required to prove his innocence, he's not required to prove his innocence by testimony. He's not required to prove his innocence by physical evidence or any other particular kind of evidence. But what happened in this case is distinctly different because what the judge actually did was he narrowed that third principle by specifically enumerating one form of evidence and, therefore, by admission, really excluding all of the others. And as discussed in our briefs, this – That was asked to a juror that was not seated, correct? The complete question, the no evidence at all, was asked to one veneer member who never sat on the jury, yes. Okay. So that doesn't really matter, right, if the juror never sat? Right. So that one juror, that was the one and only time that the judge asked the proper question. I get it. Okay. In all the other – Okay. In the non-jury, the proper question was asked.  Okay. So this – You have no objection if the judge, just as a practical matter, the way I would have done it, would be to ask the zero questions to the veneer as a whole, asking for a showing of hands, principles one, two, three, let the record reflect after each. There's no – nobody raised their hand, right? That would be a way to do it very efficiently. Yeah, and I've seen judges do that before, and as far as I can tell – That's the way I always complied. That was the – That was the script. Back in the day. And that, you know, it enumerates all the principles. It gives every juror an opportunity to affirm that they understand and accept. And as far as I know, that's a perfectly adequate and appropriate way of performing the rule of forfeiture. But it's also mechanical, and the judge – you tend to be reading things, and the judge is trying to make it conversational. Right. And maybe there's situations when you're questioning people in a smaller group, you get a – you might get a more accurate answer from somebody, right? Oh, certainly. And we don't have any objection to the idea of, you know, if a judge wishes to question jurors in smaller groups, or even individually, if that's what a particular judge wants to do, I don't see that there's any problem with that. The question is simply, did they ask about the four 431B principles and properly get that affirmation of understanding and agreement? And in this case, that is what we're missing because of the narrowing of that third principle down to just the topic of testimony. And this ended up being significant in this case. This is, as we argued in our briefs, a closely balanced case. Tell us why. Why? Well, I'm glad you asked. There are several reasons. First and foremost, one of the things we note most initially about this case is the time it took the jury to reach a resolution hearing. They deliberated for three and a half hours on the first night, asking several questions, and ultimately reported to the judge that they were unable to reach a verdict, and they had to be sent home, brought back the next day to continue deliberating before they finally reached their verdict. Unfortunately, we don't know. The record doesn't show exactly how long they were there the second day. How long was the evidence in the trial? It was a short trial. I want to say it was maybe two days. I'd have to look it up to be certain, but there were really only two significant witnesses and a body camera. There were some stipulations, and I think there was some introductory-type evidence, but those were really like the key here was Officer Johnson, Officer Zeman, and Officer Johnson's body camera. But notably, among these questions that the jury sent out, and this is significant. Let me rewind just a moment here. During the presentation of evidence, defense counsel asked one of the officers several questions regarding fingerprint and DNA testing of the gun involved in this case. He asked, was the gun sent for testing? And the officer noted that the gun had been marked for testing, but there was no evidence presented as to whether it had ever actually been tested or whether it had been or what the results of any such testing might have been. Now, the state jumped on this during their closing argument and chose to address it and tried to sort of put a little bit of the responsibility on the defense there by arguing, well, look, both sides have access to the evidence. Both sides can request testing if they want. So this was an issue that was raised in front of the jury and was then highlighted during closing arguments regarding the presence or absence of this scientific physical evidence, which is, of course, one of the forms of evidence excluded from the Rule 431B questioning. Now, later, as the jury is attempting to reach their decision, they send out a question, and actually one of the questions they ask is, was any fingerprint testing performed? This was clearly an issue that the jury was paying attention to. And, of course, they were given the instruction that you have received all of the evidence. Please continue deliberating because no evidence on that point was presented. So just by the jury's own deliberations and questions, we can see that this was a significant issue for them. Beyond that, however, there's good reason why it took a while to reach a result in this case because the overall evidence was not strong. We had essentially two officers and a body camera. Now, the state has acknowledged, and it's really... And a recovered gun, right? Yes, a gun was recovered. The body camera itself does not show Randy Boss holding the gun, does not show Randy Boss dropping the gun. Frankly, it's hard to see a whole lot on the body camera because people are running, it's jerky. But you clearly, you had the body camera on him the whole time. You cannot see that at any time. Officer Johnson, who was immediately pursuing Randy Boss on foot and was right behind him, testified that he never saw Randy Boss drop a gun. Rather, he thought he saw, I think he described it as an L-shaped object of some kind at some point in Mr. Boss's hand. And then at some point while they were running down, I believe it's Cicero Avenue right there, he thought he heard the sound of metal hitting the ground. But he never saw Mr. Boss actually drop a firearm. The only person who testified to ever seeing Mr. Boss drop a firearm was Officer Zeman. Officer Zeman, however, was not directly pursuing Randy Boss. Officer Zeman was in a vehicle driving down the road following Officer Johnson and Randy Boss then further ahead. And given that he was driving on a relatively busy street, presumably Officer Zeman had some other things he needs to be paying attention to as far as other cars, the possibility of pedestrians, et cetera. But counsel, all of this seems to be pointing towards the absence of some evidence as opposed to giving us contravening evidence that we can weigh. Yes, that's correct, Your Honor. For balance? I think that's an important point to note, actually, because of course the scale analogy in general is a good analogy for talking about evidence. But as the Supreme Court itself has noted, and as this Court has noted, and in some cases people of the Oathman, I know it was noted, the closely balanced standard does not require the defense to present evidence. In fact, the defense is never required to present evidence. The question is simply was the evidence slim enough that the verdict could have gone the other way? Was this closely balanced? Was it a hard decision for the fact finder? Or was this overwhelming and it wouldn't have made a difference? And in this case, both by the nature of the evidence itself and by the jury's deliberations and the questions they asked and the amount of time it took them to reach a conclusion, we can see that this was indeed closely balanced. And it is very possible, given particularly the focus on this issue of scientific evidence, that had the proper Rule 431B questioning been performed, had these jurors been informed that the defense has no burden to present physical evidence, scientific evidence, forensics, what have you, that could have led to a different result in this case. And therefore, we believe the evidence is indeed closely balanced, and we believe that the appropriate resolution here under this particular argument would be for Mr. Boss to have his conviction reversed and his case remanded for a new trial. So under your view of the law, it would be easier to get a reversal for an objection at an issue on which there was no contemporaneous objection, no objection raised in a post-trial motion, than it would be to say raise a sufficiency. Well, certainly, when you talk about sufficiency, sufficiency is the most difficult standard we face on here.  But sufficiency requires all the inferences in favor of the State, which isn't called for under a plain error analysis. A plain error analysis is, as the Supreme Court notes, a sort of a common-sense assessment of the evidence and just a determination of its exceptional rule.  Because the general rule is if you don't raise an objection, it's gone. You lose it. Right. Yes, correct. And it is. It is an exception. And certainly in great many cases, as this Court has held and any number of others have, in many cases, the evidence is not closely balanced and plain error review is not called for. But in this case, again, considering the length of time the jury was deliberating, the questions they had. You know, we see a lot of cases with a lot more tortured jury deliberations than we see here. I mean, all we know for sure is it was three hours the first day and some unknown number of hours the second day, and they did not reach a verdict that first day. Am I right that that's all we know about these jury deliberations? Yeah, that's correct. I believe it was, I want to say it was just over three and a half hours the first day, and then unfortunately we don't know how long the second day. And they didn't come back and say they were deadlocked at any point the second day? Not the second day, no. They did on the first day, but not the second day. At least, again, we don't have anything like that in the record. All we have in the record literally is the beginning of proceedings, and then at some point we're told that the jury has a verdict. But I would note that, again, this is really only one aspect of it. We also need to consider the relatively limited evidence against Mr. Voss. I understand. The absence of any kind of inculpatory statement, the absence of any physical evidence linking the gun to him, we really have the partially corroborated testimony of a single witness saying he dropped that firearm. And notably, this all happened in a neighborhood that had so many witnesses. You had one who said he had an L-shaped object. Right. And you had another witness who said he dropped a gun. Yes, correct. And then you found a gun. Yeah. Right. And I would note, he found a gun in a neighborhood that had so many shootings recently that the police had literally planted a mobile command unit along the stretch on which this chase took place in order to try to gain control of the area. This was a busy street. There were cars. There was more than one place where a gun could have appeared on this street. So when they set up the mobile command unit, they just missed that there was a gun. I don't know how long the mobile command unit had been there. It may have been there for several days at that point. All we know is that they had put one there. Counsel, can you address your as-applied challenge? The as-applied challenge under the Second Amendment of the UWS statute? Yes, please. Sure. Yeah, I can take a moment on that, and then if possible, I'd like to also address the facial challenge a little bit. The as-applied challenge here is really based on what the Supreme Court in a case like Rahimi has identified as kind of one of the core bases for a restriction on Second Amendment rights, which is the idea of present dangerousness. If we look at some of the historical analogs that get cited, the state-cited surety statutes and their briefs, there are also the going armed statutes, I believe, although those haven't been cited in this case. But if we look at those, they're all based on an assessment of present dangerousness. The idea that this individual, we have good reason to believe, presents a current threat to someone's physical well-being. Now, in this case, Randy Boss was convicted of, admittedly, an armed robbery over, I believe it was just over ten years prior to his arrest for this case. He had completed his prison sentence, he had completed his MSR, and he had not been convicted of any other felony offenses since then. So while this might show that he is a felon, and it might suggest that maybe ten years ago he was a dangerous person, it certainly does not suggest that he is currently or was at the time that these police officers decided to stop and question him. So you're suggesting, just so I understand, that on your as-applied challenge, the state would have to make a showing that he was presently dangerous, and that they wouldn't be able to do that, are you? Yes, in essence, what we're arguing is that that is what the closest historical analogs that anybody can find. What about the statement in Rahimi, we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by the legislature to present a special danger and misuse. This is a category of persons, people with felony convictions, are thought by our legislature to present a special danger, and therefore, as a category, are prohibited from owning guns or having guns. Yes, and the Supreme Court did say that, but it's important to note, A, the limited nature of that statement. They did not also say that any and all such laws weren't that constitutional. They simply weren't dealing with the issue on that occasion. Notably, in Rahimi, the court could have avoided even going into the second step of analysis. The court could have not had to bother with historical analogs if it had chosen to simply find that felons in general, as the state has argued, were somehow excluded from Second Amendment protection. But the court didn't reach that conclusion. And as the Third Circuit en banc found in Raines v. Attorney General, as Justice McDay pointed out in her dissents in People v. Noble and People v. Montgomery, there is language in Rahimi, and there is also language in some of Justice Thomas' discussion in his dissents, suggesting that, in point of fact, no, that's not the case. It requires something more. And in Rahimi, that something more, notably, importantly, was that notion of present dangerousness. The court specifically identified the fact that there is historical, there is a historical tradition of preventing individuals from possessing firearms when they present an immediate threat to someone's physical safety. I believe, if I recall correctly, Rahimi involved a, I don't know if they use the exact same language in that state, but an order of protection situation, where obviously someone has gotten an order of protection. There's an indication that this individual is a direct threat to someone. And the Supreme Court said, yes, that's sufficient. But what we have here, and this really goes to our facial challenge under the UUWF statute, is the complete disarmament of an entire category of people, regardless of any question of whether they are or even ever were dangerous. If you wrote a bad check 20 years ago for a sufficiently high amount, you have been disarmed for life. The Second Amendment no longer protects you. I understand, but your suggestion is that the Second Amendment requires an individualized determination in each case by the judge, the jury, who? Actually, Your Honor, I would not go that far. What are you saying? For the purposes of our argument, particularly for our facial challenge, we're concerned with whether the UUWF statute, as it exists now, meets the Second Amendment. The question of whether the legislature could pass some version of that statute that might pass constitutional muster is, in my opinion, not before us right now. The state has a burden to show sufficiently similar analogs in history to the UUWF statute itself. And that statute is incredibly broad, requires no showing of dangerousness, either categorically or any other way, or individually. And why shouldn't we kind of avoid that altogether? Because this wasn't raised below. There's no record with respect to this argument from below. So why shouldn't we find it premature? Just so I'm clear, is Your Honor referring to our as-applied challenge or our facial challenge? Back to the as-applied. The as-applied challenge, as we argued in our briefs, yes, that was not raised below. We do believe that, given the nature of the challenge, the record on appeal is sufficient. We know what Mr. Boss was convicted of. We know what the evidence presented at trial was. Yeah, his prior was armed robbery. Again, I think it was about a decade old. We know what his prior offense was. We know what the evidence was at trial. Those are the bases on which he was convicted. The state suggested in their briefs that it might be possible to present some evidence of Mr. Boss's dangerousness as a human being. But that's not what's at issue. That's not what the statute requires. And that's not why he was convicted. He was convicted because he had a qualifying felony, in this case armed robbery. Yeah, given the fact that a qualifying felony is a viral one, why isn't that enough? Because it's not a bad check. Well, Your Honor, what we argued. Or a possession. Right. And specifically, and again, we believe that does not apply to our facial challenge. No, we're talking about your as-applied challenge. Our argument there is that, again, this is a matter of some showing of continuing present dangerousness. If he was still under disability from a criminal sentence, that would be one thing. If he had committed a violent crime of some kind recently, that would be another. So you are saying that the Second Amendment requires an individualized determination in each case before anyone can be prohibited from owning a gun? I would say with regard to the as-applied challenge, yeah, we would argue that there has to be some degree of an individualized showing. Or, actually, let me rephrase that. I don't think that's entirely necessary. There has to be a showing of present dangerousness. Now, there might be more than one way to do that. Again, perhaps if you put, for example, a time limit on convictions so that you're talking about someone who has a violent conviction in the recent past, maybe that might be sufficient. Obviously, that's not the question before us right now. Our argument in the as-applied challenge is simply that Randy Boss himself, his facts, his case, this does not pass muster. But the state says that if they had been given an opportunity, if this was raised below, they may have presented such evidence. They may have presented additional evidence regarding his present dangerousness. Well, Your Honor, our response on that, and I understand the issue that Your Honor is raising. And on that note, what I would say is that, again, this comes down to what was actually involved in convicting Mr. Boss. There is no proviso under the UUWS statute that would present, that would create a situation where his guilt or innocence would be determined in any way by those individualized shows. He is convicted because he has a prior qualifying felony, and that's it. And so arguably, the nature of the felony itself is relevant when we talk as-applied. But there wouldn't be any purpose to showing anything beyond that under the statute as it exists today. And therefore, there is no reason why that would ever occur in the circuit court. The UUWS statute, as we saw in this case, the parties just stipulated the existence of a qualifying conviction because that's all that's required. So there is no reason why this ever would have been raised in the circuit court in that respect, simply because it's not required by the statute. You are out of time. If anybody has any additional questions. You still have five minutes to rebuttal, or if you want to briefly sum up, you can do that. I will just thank Your Honors for your time. And we do ask that Mr. Boss's conviction either be reversed outright or reversed and remanded for a new trial. And, yeah, I'll be back for rebuttal.  Thank you. Good morning. Good morning. Susan Wobbekind on behalf of the people of the State of Illinois. I know you can talk louder. Can you not hear me? Okay. And that was good. No, you said that already. Now you're good. Your Honors, I'll start with Issue 2, since counsel did as well. Your Honors, the court's admonishments, when read as a whole, sufficiently complied with Rule 431B and conveyed to the jurors that defendant did not have to produce any evidence whatsoever of any kind. The court initially admonished the entire veneer that the people had the burden to prove defendant guilty, defendant could simply sit there and present and had no obligation to testify or call witnesses, that defendant had no burden to prove his innocence, and no burden to present any evidence. That's when it admonished the entire veneer. But the questioning, you agree, focused solely on testimony and witnesses. The questioning of the jurors. Well, the questioning of the jurors, the court did say defendant had no burden, and then said defendant was presumed innocent and had no burden, and that defendant did not have to testify or call witnesses. So, saying that defendant had no burden encompasses that defendant had no burden to present any evidence. But you're asking the jury of lay people to make those presumptions, or to know what all is encompassed in that statement. Well, the court did explain to the jurors the different types of evidence at the beginning. The court did explain that there's physical evidence and that there's testimonial evidence, said that that defendant had no burden to present any evidence. And then the facts of this case are similar to Kidd or Atherton or Ingram, where the court said, admonished the jurors, that defendant had no burden to prove his innocence. Here, the court said defendant had no burden. And as in those cases, the fact that defendant had no burden would be reasonably interpreted by the jurors that he had no burden whatsoever to present evidence, testimonial or otherwise. So, while the court's admonishments did not recite the rule or the principles verbatim, the court did substantially comply and convey the meaning of that third principle to the jurors. And counsel's point that the jurors' deliberations indicate that the jurors thought that the physical evidence was a significant issue. It was not a significant issue at trial. Defense counsel raised it when he was cross-examining the officers. He asked, was the gun tested for physical evidence, for DNA or fingerprints? And then, during closing, the prosecutor accurately explained that both parties had the ability to get physical evidence. And the jurors' note asking about the physical evidence doesn't necessarily mean that they thought that the physical evidence was of particular interest in the case. And to say that is speculative. Well, they did ask about it. How many notes did they send out? They sent out one about the physical evidence. Right, but total, how many notes did the jurors send out? They sent out three, I believe. Okay. Asking for a transcript, asking about the physical evidence. So, but that note doesn't necessarily, it's speculative to say that that note means that they were having a hard time only because the physical evidence was missing. And it's particularly speculative to say that that note means that they thought that defendant had to produce that evidence. It could be that they thought that the state should have produced the evidence. It could go either way. And this court has found that jury notes merely show that the juries are taking their job seriously and working towards the goal of coming to a just decision. Do you agree with defense counsel we don't know exactly how long this jury was out? I know that the second day, that on the first day of trial, the judge said, we're going to come back at 10 a.m. tomorrow, and that the verdict was recorded at 1245. So, less than three hours on the second day.  I don't know how long they were in the first day, but on that second day, I know when the verdict was recorded. But I think counsel, defense counsel said it was three and a half hours on the first day. Okay. It was two days, there was two days of evidence in the case? Correct. Okay. Correct. Can you address the closely balanced two days? Yep, correct. Yep, sure. So, even if you find that the admonishments were insufficient, the evidence wasn't closely balanced because it consisted of the testimony of two officers. The officer's testimony established defendant's consciousness of guilt. They both testified that defendant, well, Officer Johnson testified that defendant changed course when he saw the officers driving up in their car. Zeman said that he ran when Officer Johnson approached. They both testified that defendant's pocket was way down when he was running, and that they then saw him take something out of that pocket that was black, L-shaped. They both thought that it was a gun. And Officer Zeman testified that he saw defendant drop the gun in front of the command unit. Officer Johnson, at that same point, when defendant was in front of the command unit, heard something like metal hitting pavement. And then later, Officer Johnson went back to that exact spot where they both saw and or heard the gun fall and recovered a black gun from that exact location. The body cam footage was shaky during the flight, but it's important because it shows the flight, which establishes defendant's consciousness of guilt. And it does show Officer Johnson recovering the gun in front of that command unit where they both said that defendant dropped the gun. The officers' testimonies were consistent with each other. They were credible, corroborated by the video, and they were uncontradicted. Because of this, case law tells us that the evidence was not closely balanced. Defendant's arguments that the juror's note made it closely balanced, as I said, the juror's note is not relevant to whether... They also sent out a note at the end of the first day of deliberation saying they were dead on it, right? So that's an indication. They said that they were having trouble coming to a verdict, correct. But then they also asked for the transcripts of the officer's testimony. You know, and then the next day, they only said that once. And then the next day, like we said, they were supposed to have the transcripts the next day. It's unclear whether they had them or not, but presumably they did because the court said that they would have them that second day. And then they came to a decision fairly quickly after that. And case law says that the lengthy deliberations, jury notes, do not indicate, do not render evidence closely balanced necessarily. It can be considered, though. You don't disagree that that can be considered in a closely balanced analysis? Or do you disagree? Sure, you could consider it. However... For the court, we can consider it. But when we're looking at whether the evidence is closely balanced, what we're looking at is the totality of the evidence within the context of the case. Do you disagree with counsel that we can have a closely balanced case even though the defendant didn't present any witnesses or testimony or evidence? We can have it be closely balanced. Correct, I do. You do agree with that. I agree with that, correct. Yes, and in those instances, then, what we look at is the credibility of the witnesses and whether the witness testimony or other evidence has been contradicted in any way. And here, there has been no contradictory evidence. The people were, people's witnesses were consistent with each other. Nothing contradicts the evidence that defendant knowingly possessed that gun. What about the absence of physical evidence such as the fingerprint analysis? Circumstantial evidence, the lack of physical evidence does not render a case or evidence closely balanced. Circumstantial evidence is enough. Can you address, if you'd like to address the Second Amendment? Sure. I was just going to say, too, that defendant's speaking about the lack of certain evidence in the case, and it's not what isn't here. It is, the question is, what is here? And is the, it's about the closeness of the sufficient evidence. Was it close? And here, it was not. There is no evidence to the contrary that suggests that it was not defendant's gun. I'm sorry, and then, you wanted me to address which issue?  And in particular, the as-applied challenge. Anything you want to address, but I guess my first question for you is, do you think the analysis of the as-applied challenge is different than the facial challenge, and if so, why? Well, the analysis of the as-applied challenge is different because we're looking at whether or not defendant was dangerous or law-abiding at the time of. But we're really looking at whether the statute can be constitutionally applied to him. The statute that says you have felony convictions, you can be prohibited from, you are an armed individual criminal if you have a gun. Correct. And you think that requires an individualized determination that he's dangerous? No, I do not. The question when it's as-applied is, was defendant law-abiding at the time of his arrest? And here, he was not because he was a convicted felon. So if the prior felony was tax evasion, it wouldn't matter? No, it would not matter in this instance if that was a felony. Correct. I would like to say that defendant forfeited this as-applied challenge because he didn't raise it below. Well, I guess that's a question that I'm struggling with. What should he have presented below? What more would we need to know to decide it? Well, his claim is that the UUWF is unconstitutional as-applied to him because he was not dangerous at the time of his arrest or under criminal sentence. There were no factual findings as to that in the trial court. Defendant stipulated to his prior felony. There were no evidentiary hearings on the matter. So there's no record at all regarding this issue. And for that reason, he forfeited it. But why does that matter? If the issue is what this statute can apply to him, constitutionally, why does any of that matter? Correct. You're right. It is on the record that he's a felon, and that should be all that matters. Because it does not matter whether he was dangerous at the time of his arrest in order for the law to apply constitutionally to him. It just matters whether he was law-abiding. And forfeiture aside, his claims fail on the merits. Anyway, Bruin endorsed the shall-issue regime, such as Illinois' shall-issue regime. And the UUFWF is constitutional under Bruin's two-step framework as well. Pursuant to the United States Supreme Court decision starting with Heller all the way through Rahimi, the Supreme Court has told us that felons do not retain their Second Amendment rights to possess guns post-conviction. And Illinois courts addressing this step have uniformly found that that is true. Oh, excuse me, I'm on the second step. Illinois courts have found that felons do not fall under the protections of the Second Amendment. And Illinois courts, looking at the second step of Bruin, have uniformly held that... What do you call the two steps of Bruin? I understand the two steps of Heller, but what are the two steps of Bruin? Whether defendant is of the... Whether defendant's conduct is protected by the Second Amendment is the first step.  And then the second step... And your position is that this... Mr. Boss' claim feels that that first step is not protected because he's a felon. Correct. Okay. And then the second step is whether there's historical precedent that supports this restriction on Second Amendment rights. You don't even think we have to get to that second step. Right. Okay. Right. But if we do get to that second step, as I said, Illinois courts have uniformly found that Illinois' possession regime is constitutional. And then, so, for those reasons, we would ask that this court affirm defendant's convictions. Anything else? Thank you. Thank you. Thank you. Before you get going, do you agree with her time, or do you just not know her timeline on the second day? I guess I would say I don't know. I'm aware what time the court told everybody to get there the next day. And I guess we do have record of when the verdict was recorded. We don't actually know when proceedings started. So it seems like probably a relatively reasonable estimation, but I would say that we don't know. So addressing a few issues regarding the 431B issue. First, I would note that, in essence, what a lot of the state's argument here is trying to do is it's trying to make the second 431B principle encompass the third. They're saying, well, they were told that the defense has no burden. And, therefore, they know then that the defense doesn't have to provide any evidence. But if that were the case, we would only have three Rule 431B propositions, not four. And probably less Zaire cases. Very, probably many fewer Zaire cases, yes. But the Illinois Supreme Court very explicitly chose to enunciate four principles that each juror had to be asked to understand and accept. And one of those is that the defendant is not required to present any evidence. And that simply didn't happen here. And whatever else the judge may have talked about at varying times throughout the case, no juror had the opportunity to say that they did or did not. Actually, one veneer member did, but they never sat on the jury. Other than that, no veneer member ever had the opportunity to say whether they understood and agreed with that principle, which is what Rule 431B requires. Would you disagree with Principle 3, but agree with Principle 2? Well, I don't know exactly what the number is. But could you agree that the defendant has no burden, but somehow disagree that he hasn't met on the evidence? That's a very interesting question. I think a lot of that also comes down to what would a lay person do with it. I mean, personally, I can imagine circumstances we have regarding things like affirmative defenses. We have shifting burdens, where initially the burden is on the defense to present some evidence, and then the burden shifts to the state. So, I mean, could I imagine circumstances where you would think that? Yeah. And what would a person who didn't go to law school and… Oh, that would even confuse me. Right. You're getting into shifted burdens. So I really, as far as that's concerned, might they understand that? They might. But they also very well might not. And more importantly, I would say, the Supreme Court has said this is what you have to ask them. And they specifically separated those two. So clearly somebody thought there was a meaningful difference here. Turning to a few of the other questions, yeah, the suggestion that the jury note is simply irrelevant. Common sense says that you ask about something for a reason, right? I mean, you don't normally send out a question. And I think the only two things the jury ever asked about were transcripts from the officers and this testing question. And notably, transcript of the officers would have included the question the defense counsel did of the officer regarding some of these testing issues. So there were two things that the jury felt compelled to ask about. One of them was testing, and the other one may or may not, we really don't know, we can't read their minds, have related to testing. The state relies somewhat heavily on consciousness of guilt. And on that point, I would just note that I think by now there are sufficient judicial decisions and there is sufficient evidence out there in the world to suggest that there is more than one reason why a black man runs from police. And that does not in and of itself make him guilty of possessing a firearm. The state talks a lot about the evidence, well, we should focus on the evidence that was there, not the evidence that wasn't. But actually, the point of error analysis is all about both. Obviously, if there had been more evidence, the point of error, the closely balanced problem would look different, right? The fact that there wasn't physical evidence, the fact that there wasn't an inculpatory statement, the fact goes to the overall, in your view, weakness of the state's case. Correct. Yes, absolutely. So, if your honors don't have any other questions about that, I'll turn briefly to a couple of... But isn't that counterbalanced by the witnesses who saw him run by and then, I guess coincidentally, there's a gun in that very area when they traced their steps? Well, your honor, as to that, I would simply note, again, we are not challenging the sufficiency of the evidence here. We're not questioning whether a reasonable juror could have found Mr. Boss guilty. We're asking whether it could have gone the other way, whether the evidence was sufficiently close. And perhaps a juror could have reached... But I'm saying the counterbalancing. Well, there is a, again, there is a balancing there. I would point to a case like Peeble v. Piekowski. What we essentially have here is largely eyewitness testimony and then a gun that nobody can definitively link to Mr. Boss. In Peeble v. Piekowski, the court found the evidence closely balanced. They said he dropped it. They saw him drop it. And then they recovered a gun on him. Well, Officer Zuman saw him drop it. Officer Johnson did not. Well, he saw him with a dark L-shaped object, right? Right. Yes, but he did not see him drop that object. But in something like Peeble v. Piekowski, they found that two eyewitnesses, without corroborating, without connecting physical evidence to the defendant, was closely balanced evidence. And again, here, we're left with less to speculate about because we have the jury themselves saying, we can't reach a verdict. We can't get there. And having to come back the next day after specifically asking about this subject of physical evidence. So we have good reason on this record to believe that this was a close case and could have gone either way, which is what the plain error rule requires. I'll turn just briefly to the Second Amendment issue, if nobody has any other questions here. I would like to note, we do not agree and we do not believe that the law supports the suggestion that the issue here is whether Mr. Boss was law-abiding. The Second Amendment says absolutely nothing about law-abiding citizens. It has been mentioned a couple of times. It's been mentioned several times in some United States Supreme Court decisions. Notably, however, Heller also described this right in a broad sense and as applying to a broad number of people. All of these decisions which have said we are not questioning X or Y, we are not questioning felon in possession statutes, also have not said we're finding felon in possession statutes legitimate. All they have said is, we are not addressing that right now. For these purposes, we are not saying that any law that bans possession by felons is unconstitutional because that wasn't the issue presented in those cases. However, we do believe that it is notable that in a case like Rahimi, where the court could have resolved the issue on that basis, they didn't. And that would have simplified the analysis a great deal and answered a whole lot of questions that are percolating all around the country regarding the Second Amendment. We certainly do acknowledge that thus far, Illinois courts have uniformly found this statute constitutional. We will note they have not uniformly found in favor of the law-abiding theory. I know people v. Brooks found otherwise. There may be one or two others now, but I'm not positive. Our Supreme Court's going to clarify all this. We will note that none of those decisions are final. There is literally a petition for leave to appeal pending on all of them.  And this is an area of the law that is clearly evolving and evolving quickly. And what really this issue comes down to is that Bruin test. Is the conduct covered by the Second Amendment? And if so, are there historical analogs of sufficiently similar scope and purpose to render this statute constitutional? And the state has not, and the state under Bruin bears this burden, has not presented any analogs that are even close. The closest thing we have that they have presented us with are surety statutes, which were temporary, required nothing but a money bond, had no penal consequences, and were based on an assessment of present dangerousness. The U.S. statute is permanent, cannot be relieved by payment of a bond, bans all possession, not just carriage in public. A person under the UWF statute can't even hold a bullet in their own home. And it carries significant penal consequences. There are simply no relevant categories, no relevant characteristics that these statutes share. And therefore, under the Bruin test, the state has not carried their burden to show that this statute is constitutional. And therefore, we believe that this court should find otherwise. Let me ask you sort of a hypothetical. If we were to find that UWF was constitutional, if we didn't buy your constitutional claims, and we found that you forfeited the as-applied claim, wouldn't that give your client another bite at the apple with respect to that later down the road? Yeah, I suppose if you were to reject the facial challenge, and were to simply find the as-applied challenge forfeited rather than ruling against it on its merits, then I believe that would make that challenge available in a later, perhaps in a post-conviction proceeding. The one thing we would note about that, certainly that would be a possibility. Obviously, as we can tell from all the discussion we've been having here today, this area of Second Amendment law is extremely complex and frequently changing. As safety nets go, I would say leaving this to an unrepresented pro se defendant to try to put together an as-applied constitutional challenge under the Second Amendment to this, I don't have a lot of hope for that as a viable option. But I do believe that from a legal perspective, yes, it would be allowable. I hope, you know, perhaps if they could get counsel or something, someone who could argue it on their behalf. But I believe that the issue itself would be preserved, yes. Or the law could change. Well, and the law on this seems to be, yeah, in pretty constant flux. Well, either way, if there was a change in law, your client, and it was beneficial, would be able to benefit. Yeah, and presumably if a shift in the law were to occur, yeah, obviously he would then be able to take advantage of that in a later, in a post-conviction proceeding, whatever it might be, you know, depending on what the Illinois Supreme Court ends up eventually doing with this issue, depending on what the United States Supreme Court ultimately ends up doing with this issue. However, we believe that following the Bruin test faithfully and holding the state to their burden, right here, the appropriate, the proper resolution is to find that they have not carried that burden, and that, therefore, this statute does violate the Second Amendment, and Randy Boss' conviction should be reversed outright. If there are no further questions, then I thank your honors for your time, and thank you. Thank you. Thank you to all of you. This was very well briefed and very well argued, and we will take this matter under account, and you will hear from us in due course. I think we are in recess. Yes? Yes we are.